IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JAGADESHWAR REDDY NOMULA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:20-cv-1417 |
| ) | |
| ANDREW HIRSHFELD, performing the ) | |
| Functions and Duties of the Under Secretary ) | |
| of Commerce for Intellectual Property and ) | |
| the Director of the United States Patent and ) | |
| Trademark Office. ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Jadadeshwar Nomula brings this 35 U.S.C. § 145 action following the Patent Trial and Appeal Board's ("PTAB") decision affirming a patent examiner's rejection of all claims in plaintiff's U.S. Patent Application Serial No. 15/245,208 (the "'208 Application"). In the '208 Application, plaintiff seeks to patent a system and method for targeting specific content to individual users of a website. The patent examiner in the case rejected the patent claims because (i) the claims did not relate to patent-eligible subject matter under 35 U.S.C. § 101 and (ii) the claims sought to patent an invention that would have been obvious to someone of ordinary skill in the art under 35 U.S.C. §103. The PTAB affirmed the rejection of the '208 Application on the § 101 ground, namely that the subject matter is not patent-eligible because it is directed to an abstract idea, but reversed on § 103 obviousness.

Following the PTAB's rejection of the '208 Application, plaintiff filed this § 145 action contesting the PTAB's ruling. At issue now is defendant's motion to dismiss the complaint for

failure to state a claim pursuant to Fed R. Civ. P. 12(b)(6). For the reasons that follow, defendant's motion to dismiss must be granted.

## I.

Plaintiff is the owner and named inventor of the '208 Application, which is titled "System and Method for Presenting Targeted Content." Compl. ¶ 7, 11. The '208 Application describes the claimed invention as a "method and system for presenting targeted content to users over the internet...." Exh. 1 at US-1. According to the specification in the '208 Application, the invention relates "to the field of presenting targeted content to users of a website," particularly when that targeted content is "based on information aggregated from one or more online social networking platforms." *Id.* at US-7 ¶ 2. The specification explains that the invention involves generating a unique identifier for an individual user of a website, collecting information about that user, linking that information to the identifier, and then sending that user targeted content based on the collected information. *Id.* at US-9 ¶ 8. The '208 Application also identifies particular embodiments, or implementations, of the invention, some of which provide a graphic representation of the invention.

The following diagram in the '208 Application's specification is one embodiment that illustrates the invention claimed.



FIG. 1

Exh. 1 at US-2. This figure shows "System 100," represented by a large box containing a series of smaller modules, each of which performs a different function in the final claimed invention. Exh. 1 at US-11 ¶ 19 ("System 100 may enable presenting targeted content over the internet."). According to the specification, "System 100 includes an authentication module 102, a data

aggregation module 104, a database 106, an identifier generation module 107 and a targeted content selection module 108." *Id.* at US-11 ¶ 21. The figure also attempts to illustrate that the system uses a communication network (represented by a cloud marked "116") to communicate with individual users of a website ("110") and multiple social media networks ("112" and "114"). *Id.* And the specification explains that these pieces would function together to provide a website with data about its users, including a "user's name, date of birth, location, email address, likes, dislikes, groups, interests, and feeds." *Id.* at US-13 ¶ 24.

The '208 Application contains twenty-nine different claims. Exh. 1 at US-23 to US-32. Yet, all twenty-nine claims need not be considered individually where one claim is representative of the '208 Application as a whole. In this regard, the Federal Circuit has held that when multiple claims in a single patent application are "substantially similar and linked to the same abstract idea," a court may treat a single claim as representative and that "addressing each claim of the asserted patents [is] unnecessary." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). More recently, the Federal Circuit has stated that a court "may treat a claim as representative ... if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim...." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

In the motion to dismiss briefing, the defendant asserted that claim 1 is representative of the '208 Application as a whole. Plaintiff did not challenge the defendant's assertion that claim 1 is representative of the '208 Application as a whole and a review here of all the claims confirms that claim 1 is representative of the '208 Application. Accordingly, it is appropriate to consider claim 1 to be representative of all claims in the '208 Application, and thus it is unnecessary to consider separately the other claims included in the '208 Application. See *In re*

4

*TLI Commc'ns LLC Pat. Litig.*, 87 F. Supp. 3d 773, 786 (E.D. Va. 2015), aff'd, 823 F.3d 607 (Fed. Cir. 2016) (explaining that "the § 101 analysis only needs to be carried out with respect to a 'representative' claim and the results of that analysis can then be applied to the remaining claims in the patent.").

Claim 1 of the '208 Applications states:

> A method, performed by an aggregator computer system, for providing an entity of content targeting a specific user to a first computer system operating a first website, the aggregator computer system having access to a database storing, for each of a plurality of users, a respective user identifier used to identify the respective user and respective aggregated activity information of the respective user, the method comprising steps of:
>
> receiving, from a computing device of a first user, by the aggregator computer system, a first set of identification information of the first user identifying the first user;
>
> generating, by the aggregator computer system, a first user identifier using the received first set of identification information of the first user, and storing the generated first user identifier in the database such that the first user becomes added to the plurality of users of the database and the stored first user identifier becomes the respective user identifier used to identify the first user;
>
> aggregating, by the aggregator computer system, activity information about the first user from each of a group of two or more website computer systems each operating a respective website, to form the aggregated activity information of the first user stored in the database, the stored respective aggregated activity information of the first user including two or more sets of activity information of the first user each indicating one or more occurrences of prior activities which the first user conducted on the respective website of one respective website computer system among the group of website computer systems;
>
> receiving, from the first computer system, by the aggregator computer system, a content request targeting the first user including a second set of identification information of the first user, and matching, by the aggregator computer system, the received second set of identification information of the first user, with the stored first user identifier of the first user;
>
> acquiring, in response to the content request targeting the first user, by the aggregator computer system, an entity of content targeting the first user using the respective aggregated activity information of the first user stored in the database; and

>     sending, to the first computer system, by the aggregator computer system, the acquired entity of content targeting the first user, for the first computer system to present the acquired entity of content by incorporating the acquired entity of content into a content page of the first website displayable on a user terminal visiting the first website.

*Id.* at US-23 to US-24.

During the prosecution of the '208 Application, the patent examiner rejected all of the claims in the application because they did not refer to patent-eligible subject matter under 35 U.S.C. § 101. Compl. ¶ 12. Plaintiff appealed that decision to the PTAB. The PTAB treated claim 1 as representative of the '208 Application as a whole and affirmed the patent examiner's conclusion that the claim was directed to an abstract idea and was not patent-eligible under § 101. *Id.*[1] Plaintiff contests the PTAB's decision here by filing this § 145 action, and this matter is currently at issue on defendant's motion to dismiss.

## II.

The well-settled motion to dismiss standard does not require extensive elaboration. As the Supreme Court has made clear, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Importantly, in making this determination the district court must "accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff]." *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015). But the district court is not bound to "accept as true a legal conclusion couched as a factual allegation." *Anand v.*

---

[1] The patent examiner also rejected the claims in the '208 Application on obviousness grounds, pursuant to 35 U.S.C. § 103(a). In its review, the PTAB concluded that the patent examiner did not sufficiently explain its reasoning, and that the record could not sustain a *prima facie* finding of obviousness. For the reasons stated *infra*, it is unnecessary to reach or decide the decision of obviousness under § 103.

*Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Importantly for this motion, "[p]atent eligibility under 35 U.S.C. § 101 is a question of law that may contain underlying issues of fact." *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 (Fed. Cir. 2018) (citing *Berkheimer*, 881 F.3d at 1365). Given the possibility of underlying factual disputes, deciding a patent challenge at the Rule 12(b)(6) stage is "inappropriate where claim elements are adequately alleged to be more than well-understood, routine, or conventional" *Id.*, 1365 n.4. But where "there are no disputed facts material to the issue of patent eligibility, the district court's resolution of the inventive concept inquiry is proper." *Id.* Accordingly, dismissal under Rule 12(b)(6) is appropriate in the absence of plausible factual allegations in the complaint concerning patent eligibility under § 101. *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016).

### III.

Section 101 of Title 35, which defines the subject matter eligible for patent protection, provides as follows:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

However, the broad rule permitting patents for *any* new process also "contains an important implicit exception," namely that an inventor may not patent laws of nature, natural phenomena, or abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). These categories are excluded from patent protection "because 'monopolization of those tools

7

through the grant of a patent might tend to impede innovation more than it would tend to promote it.'" *In re TLI*, 87 F. Supp. 3d at 783 (quoting *Mayo*, 566 U.S. at 71).

In *Alice*, the Supreme Court invalidated a patent because the underlying patent claims were drawn to an abstract idea. 573 U.S. at 218. In doing so, the court announced a two-step analysis for distinguishing subject matter eligible for patent protection under § 101 from subject matter ineligible for patent protection. For the first step in the *Alice* analysis, a court must determine whether the claims at issue are directed to a patent-ineligible concept, such as abstract ideas. *Alice*, 573 U.S. at 217. An idea is abstract if it has "no particular concrete or tangible form." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014). Although abstract ideas include a "preexisting, fundamental truth," the category also includes a patent that seeks to cover a "longstanding commercial practice." *Alice*, 573 U.S. at 220. Thus, the Federal Circuit teaches that a court applying step one of *Alice* should ask "whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016). When considering claims of abstraction regarding software patents, "courts must be careful to avoid allowing the typically convoluted claim language—'patent-ese'—to obfuscate the general purpose and real essence of software patent claims." *In re TLI*, 87 F. Supp. 3d at 783. Therefore, patents whose claims are "directed to generalized steps to be performed on a computer using conventional computer activity are not patent eligible." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017).

If a patent claim appears to be directed to an abstract idea, then a court proceeds to the second step of the *Alice* analysis. In this step, a court must "examine the elements of the claim to

8

determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 79 (2012)). In the step two analysis, a reviewing court must consider the representative claim "both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* at 217 (quoting *Mayo*, 566 U.S. at 79). It is settled that "well-understood, routine, conventional activity" is insufficient to constitute an inventive concept which can save a patent from being void for targeting an abstract idea. *Mayo*, 566 U.S. at 79. For example, "[t]he use and arrangement of conventional and generic computer components recited in the claims—such as a database, user terminal, and server—do not transform the claim, as a whole, into 'significantly more' than a claim to the abstract idea itself." *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1056 (Fed. Cir. 2017) (quoting *Alice*, 573 U.S. at 225). In sum, to survive step two of the *Alice* analysis, the patent applicant must show that the patent contains some additional, inventive concept which, when applied to the abstract idea at issue, rescues the patent from abstraction.

Here, the application of *Alice*'s two-step test to the '208 Application makes clear that the '208 Application is not patent-eligible under 35 U.S.C. § 101.

The analysis at step one of the *Alice* framework points convincingly to the conclusion that the '208 Application is directed to the abstract idea of showing targeted content to an internet user. In *Alice*, the Supreme Court explained that methods of "organizing human activity" are abstract ideas that are not patent-eligible. *Alice*, 572 U.S. at 220. Although the precise boundaries of what "organizing human activity" encompasses are not clear in the caselaw, the Federal Circuit has explained that "organizing human activity" includes "abstract processes that

9

can be performed by an individual." *Salwan v. Iancu*, 825 F. App'x 862, 866 (Fed. Cir. 2020). As one example, the Federal Circuit has held that a patent "directed to filtering content on the Internet" was directed as "an abstract idea because it is a longstanding, well-known method of organizing human behavior, similar to concepts previously found to be abstract." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016). Importantly, the Federal Circuit has held in several cases that claims directed to presenting Internet users with targeted content are abstract ideas. *See, e.g., Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020) (concluding that a patent directed delivering targeted content to Internet users was not patent-eligible because "the claimed invention is at most an improvement to the abstract concept of targeted advertising wherein a computer is merely used as a tool."); *Brit. Telecomms. PLC v. IAC/InterActiveCorp*, 813 F. App'x 584, 587 (Fed. Cir. 2020) ("We have previously held that tailoring the provision of information to a user's characteristics, such as location, is an abstract idea.").

The language of the '208 Application makes clear that the claimed invention is directed to organizing human activity to deliver targeted content to an Internet user. For example, the abstract introduces the patent as a "method and system for presenting targeted content to users over the internet." Exh. 1 at US-1. The language of representative claim 1 states that the invention is a "method ... for providing an entity of content targeting a specific user..."*Id.* at US-23. Although the claim elaborates on the specifics of the invention, these added details are merely steps for implementing the invention of targeted content using generic computer functions. For example, representative claim 1 describes a method of "receiving" information about a user, "generating" an identifier for that user, "aggregating" information about that user, "receiving" a request to target that user with content," and "sending" that user the targeted

10

content. *Id.* at US-23 to US-24. These added details are insufficient to save the claim from fatal abstraction, for, as the Federal Circuit has made clear, it is not enough merely to "improve a fundamental practice or abstract process by invoking a computer merely as a tool." *Customedia*, 951 F.3d at 1364. Moreover, the '208 Application's specification, which explains that the claimed invention fills a "need for a technique to improve relevancy of the targeted content presented to users," also fails to show that the claim is not directed to an abstract idea. Exh. 1 at US-8 ¶ 7; *see Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 889 (Fed. Cir. 2019) (explaining that "claims, whose focus is 'not a physical-realm improvement but an improvement in a wholly abstract idea,' are not eligible for patenting." (quoting *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1168 (Fed. Cir. 2018)). Accordingly, the '208 Application is targeted at an abstract idea, and thus it is appropriate to proceed to step two of the *Alice* analysis.

Under step two of the *Alice* analysis, a reviewing court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 218 (quoting *Mayo*, 566 U.S. at 78–79). In other words, step two asks whether the '208 Application contains an inventive concept, such that, when coupled with its underlying abstract idea, the '208 Application is eligible for patent protection under § 101. Particularly relevant for the '208 Application, the Federal Circuit has explained that "[t]he use and arrangement of conventional and generic computer components recited in the claims—such as a database, user terminal, and server—do not transform the claim, as a whole, into 'significantly more' than a claim to the abstract idea itself. *Credit Acceptance Corp*, 859 F.3d at 1056 (quoting *Alice*, 573 U.S. at 225).

11

A review of the specification for representative claim 1 shows only a recitation of conventional computer components and routine computer functions. Exh. 1 at US-23 to US-24 (describing a "computing device," "computer system," "website," "aggregator," "identifier," and "database," which are involved in "receiving," "generating," "aggregating," "acquiring," and "sending" information). But these computer functions are "hardly groundbreaking" and instead merely provide "textbook example[s]" of "conventional computer function[s]." *In re TLI*, 87 F. Supp. 3d at 790. Whether considered individually or as an ordered combination, these components do not transform the underlying abstract idea into patent-eligible subject matter. *See In re Morsa*, 809 F. App'x 913, 918 (Fed. Cir. 2020) (explaining that a recitation of generic computer functions such as "saving by the computer system the user information and receiving at the computer system over the network does nothing more than instruct the user on how to implement the abstract idea using generic computer components.") (internal quotations omitted). In sum, the '208 Application does not contain any inventive concept which transforms the claim into something more than the abstract idea of delivering targeted content to an internet user. Therefore, the '207 Application is ineligible for patent protection under § 101.

Plaintiff presents four arguments against this result. None is persuasive. First, plaintiff argues that step two of the *Alice* analysis is a factual issue inappropriate for resolution at the motion to dismiss stage. Plaintiff's argument relies on *Berkheimer*, where the Federal Circuit held that the "question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." *Berkheimer*, 881 F.3d at 1368. But a review of *Berkheimer* shows that the decision does not support plaintiff's position. In *Berkheimer*, the Federal Circuit held that some of the claims in a challenged patent involved factual issues concerning *Alice* step two. *Id.* But the Federal Circuit

in *Berkheimer* was clear that in many cases, patent eligibility can be determined at the Rule 12(b)(6) stage. *Id.* ("Patent eligibility has in many cases been resolved on motions to dismiss..."). Moreover, the *Berkheimer* opinion distinguished (i) some of the claims there at issue, which featured "limitations [which] amount to no more than performing the abstract idea of parsing and comparing data with conventional computer components" and were therefore patent-ineligible, from (ii) other claims which involved the "arguably unconventional inventive concept" of an improved method of archiving digital objects which might (upon further factual development) render the claims patent-eligible. *Id.* at 1370. Plaintiff's representative claim 1, however, is unlike the "arguably unconventional" claims which the *Berkheimer* court described. No such potentially patent-eligible claim exits here. Representative claim 1 describes steps of receiving user information, aggregating user activity, and matching that data via a user identifier. As a matter of law, these claimed steps are ineligible for patent protection, for, as the Federal Circuit has made clear on more than one occasion, "claims that 'merely collect, classify, or otherwise filter data' are ineligible for patent under § 101."*Braemar Mfg., LLC v. ScottCare Corp.*, 816 F. App'x 465, 470 (Fed. Cir. 2020) (quoting *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017)).

Plaintiff's second argument is that dismissal is improper under *Kappos v. Hyatt*, 566 U.S. 431 (2012), where the Supreme Court held that plaintiffs in § 145 actions are permitted to introduce new evidence supporting patentability. But this argument puts the cart before the horse. Before plaintiff can introduce new evidence, he must satisfy the pleading requirements of the Federal Rules of Civil Procedure. Where, as here, plaintiff has alleged "no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law," dismissal of

plaintiff's complaint is appropriate pursuant to Rule 12(b)(6). *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

Plaintiff's third argument is that the United States Patent and Trademark Office's ("USPTO") most recent guidance supports a finding that a patent application is not directed to an abstract idea if that application integrates the abstract idea into a practical application.[2] Plaintiff further argues that the method described in the specification is a practical application of an abstract idea and an improvement over the prior art. The '208 Application, however, belies this argument. As discussed above, representative claim 1 recites only generic and conventional computer technology and describes routine and ordinary computer functions. Exh. 1 at US-21. The only improvement in computer function that the '208 Application purports to claim is that the method will "enhance the relevance of targeted content presented to the user.". Exh. 1 at US-08 ¶ 6. As a matter of law, "generic speed and efficiency improvements inherent in applying the use of a computer to any task" are "not an improvement in the functioning of the computer itself" and are ineligible for patent protection. *Customedia*, 951 F.3d at 1365. Further, plaintiff makes no attempt to distinguish various Federal Circuit cases, discussed above, holding that claims directed to delivering targeted content are patent-ineligible, nor would such an attempt succeed. In sum, the '208 Application fails to integrate the abstract idea of delivering targeted content into any practical application or novel improvement which would save the '208 Application from abstraction.

---

[2] Plaintiff makes this argument without providing citation to the USPTO's most recent guidance on patent eligibility. Even assuming that plaintiff is referencing the USPTO's 2019 patent eligibility guidance, this document is unhelpful to plaintiff's argument. *See* 2019 Revised Patent Subject Matter Eligibility Guidance, 84 Fed. Reg. 50-01 (2019). This guidance merely recapitulates *Alice* and the caselaw referenced previously in this opinion and does not provide an independent basis for finding that the '208 Application is patent-eligible.

Plaintiff's fourth argument is that the abstract idea of delivering targeted content to a user is so broad that it would allow the abstraction exception to § 101 to swallow the rule. Plaintiff relies on *Enfish v. Microsoft*, 822 F.3d 1327 (Fed. Cir. 2016) for this argument. In *Enfish*, the Federal Circuit rejected the district court's conclusion that the underlying patent claim was directed to the abstract idea of "the concept of organizing information using tabular formats," explaining that "describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." *Enfish*, 822 F.3d at 1340. But the comparison to *Enfish* is inapt.

In *Enfish*, the claims at issue were "directed to a specific improvement to the way computers operate," namely a particular form of data storage that used a "self-referential table for a computer database." *Id.* at 1336–40. Further, in *Enfish* the Federal Circuit concluded that the district court there "oversimplified the self-referential component of the claims and downplayed the invention's benefits." *Id.* at 1338. To be sure, *Enfish* is an important cautionary signal to district courts to avoid describing claims at an inordinately high level of abstraction. But this caution is not ignored here. There are no such improvements or benefits articulated in the '208 Application. To the contrary, the conclusion that the '208 Application is directed to the abstract idea of targeted content delivery to internet users comes essentially verbatim from the '208 Application's abstract, specification, and representative claim 1. *See* Exh. 1 at US-01 (describing a "method and system for presenting targeted content to users over the internet"), US-09 ("a method for presenting targeted content to users over the internet is provided"), US-23 (explaining the representative claim as a "method, performed by an aggregator computer system, for providing an entity of content targeting a specific user…"). In sum, Plaintiff submitted a patent application which, on its face, is directed to an abstract idea and is therefore ineligible for

a patent under § 101. This conclusion in no way enlarges the abstract idea exception to § 101, nor does it any way result in the possibility that "the exceptions to § 101 [will] swallow the rule." *Enfish*, 822 F.3d at 1337.

Because the '208 Application is directed to the abstract idea of delivering targeted content to an internet user, the application is patent-ineligible under § 101. The result reached here finds firm support in caselaw from the Federal Circuit and other courts considering the issue. *See, e.g., Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016) (explaining that "the essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101, especially in the area of using generic computer and network technology to carry out economic transactions."); *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) ("[O]ur precedent is clear that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea."); *Content Extraction*, 776 F.3d at 1348 ("Applying Mayo/Alice step two, we agree with the district court that the asserted patents contain no limitations—either individually or as an ordered combination—that transform the claims into a patent-eligible application."); *Yanbin Yu v. Apple Inc.*, 392 F. Supp. 3d 1096, 1107 (N.D. Cal. 2019) ("While the mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional, in combination with all the other evidence, a motion to dismiss is proper on this record." (internal quotations and citations omitted)); *IPA Techs., Inc. v. Amazon.com, Inc.*, 352 F. Supp. 3d 335, 349 (D. Del. 2019) (holding that "neither a simple instruction to apply an abstract idea on a computer, nor claiming the improved speed or efficiency inherent with applying the abstract idea on a computer satisfies the requirement of an inventive concept." (internal quotations and citations omitted)).

Accordingly, defendant's motion to dismiss must be granted on § 101 grounds. Given this result, it is unnecessary to reach or decide the merits of the PTAB's decision on obviousness under § 103. The Supreme Court has described patent-eligibility under § 101 as "a threshold test." *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Since the '208 Application cannot clear the threshold of § 101, there is no need to proceed further to determine whether the '208 Application concerns non-obvious subject matter as required by § 103.

An appropriate Order will issue.

The Clerk is directed to provide a copy of the Opinion to all counsel of record.

Alexandria, Virginia
September 20, 2021.

/s/ _____
T. S. Ellis, III
United States District Judge